# EXHIBIT A

Filing # 231218096 E-Filed 06/25/2026 02:41:37 PM

## IN THE COUNTY COURT OF THE TENTH JUDICIAL CIRCUIT
## IN AND FOR POLK COUNTY, FLORIDA
## CIVIL DIVISION

LINDA BRENNAN,

     *Plaintiff,*

     v.

EQUIFAX INFORMATION
SERVICES, LLC

     *Defendant.*

Case No.:

**JURY TRIAL DEMANDED**

### COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, LINDA BRENNAN ("Ms. Brennan"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, EQUIFAX INFORMATION SERVICES, LLC ("Equifax"), stating as follows:

### PRELIMINARY STATEMENT

1.    This is an action for damages exceeds $8,000, but less than $50,000, exclusive of attorney's fees and costs, brought by Ms. Brennen against Equifax for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.* ("FCRA").

### JURISDICTION AND VENUE

2.    Jurisdiction arises under the FCRA, 15 U.S.C. § 1681p and § 34.01, Fla. Stat.

3.    Equifax is subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to § 34.01, Fla. Stat.

4.    Venue is proper in Polk County, because the acts complained of were committed and/or caused by the Defendant within Polk County.

## PARTIES

5. Ms. Brennan is a natural person and at all times relevant, resided in Lakeland, Polk County, Florida.

6. Ms. Brennan is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. Equifax is a Georgia limited liability company with a principal business address of 1550 Peachtree Street NW, Atlanta, GA 30309.

8. Equifax is registered to conduct business in the State of Florida where its registered agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

9. The Equifax is a nationwide Consumer Reporting Agency ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that they, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engage in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and use various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Ms. Brennan's May 2026 Consumer Disclosure

10. On or about May 12, 2026, Ms. Brennan requested and obtained a copy of her consumer credit disclosure from Equifax.

11. Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Ms. Brennan's request, Equifax was required to "clearly and accurately" disclose all information in Ms. Brennan's file at the time of her request, with the limited exception that her Social Security number could be truncated upon request.

Page **2** of **15**

12. Equifax provided an electronic copy of Ms. Brennan's *Consumer Disclosure* ("Equifax's Disclosure") to her at her home address in Lakeland, Florida.

### Equifax's Disclosure Was Not Complete, Clear, or Accurate

### Missing Original Creditors

13. Despite a requirement to disclose all information in her credit file at the time of her request, Equifax's Disclosure omitted significant amounts of information contained in Ms. Brennan's credit file.

14. Equifax's Disclosure indicated that Ms. Brennan's file contained twenty-three (23) accounts classified as "Credit Accounts."

15. Equifax's Disclosure indicated that Ms. Brennan's file contained no accounts classified as "Collections."

16. Equifax's Disclosure states "Credit Accounts": "includes all types of credit accounts, such as revolving accounts, mortgage accounts, and any other installment loans or open lines of credit."

17. One (1) of the tradelines appearing in the "Credit Accounts" section reported to Equifax is not a "credit account" whatsoever.

18. The non "Credit Account" account appearing in that section were reported by Jefferson Capital Systems ("Jefferson").

19. Jefferson is a *Debt Buyer* –a company whose primary purposes are the purchase and collection of debts which were originally owed to third parties.

20. As Jefferson does not lend to consumers, it is *never an Original Creditor*.

21. Despite this, when disclosing the Jefferson tradeline to Ms. Brennan, Equifax indicated that Jefferson were the original creditors of the accounts, omitting any reference to the true original creditors.

22. Despite being required to provide a full and complete disclosure of the information contained within its records, per 15 U.S.C. § 1681g(a), under the "Account Details" section of the account, Equifax placed a notation, "Contact the creditor or lender if you have any questions about it." *Id.*

23. Equifax thus shifted the burden of disclosure and inquiry away from itself, and onto Ms. Brennan.

### Missing Account Numbers

24. Making matters even more confusing for Ms. Brennan, Equifax omitted all but the last four digits of the account numbers relating to the tradelines listed in the "Credit Accounts" and "Collection" sections of the disclosure.

25. Jefferson, along with Equifax's other furnishers of data, reported full account numbers to Equifax, and this information was not contained within Equifax's file regarding Ms. Brennan at the time of her request.

26. When Equifax produces and sells reports regarding Ms. Brennan to third parties, the full account numbers and names of the original creditors are included in its reports.

27. The accuracy of Equifax's reports to third parties demonstrates its ability to comply with 15 U.S.C. § 1681g(a) as well as the contents of its files.

28. Having a duty to disclose *all of the information* regarding the accounts in Ms. Brennan's file, Equifax breached its duty by failing to provide the account numbers and

2026CC-007167-A000-BA        Received in Polk 06/25/2026 04:29 PM

original creditors' names, as such information is necessary for a consumer to be able to research and evaluate the information contained in her credit file.

29. Absent such information, a consumer is reduced to, at best, playing detective and, at worst, guessing as to whether the information in their report is accurate.

30. Equifax's disclosure contains a section entitled "Collections," stating: "Collections are accounts with outstanding debt that have been placed by a creditor with a collection agency. Collections stay on your credit report for up to 7 years from the date the account first became past due. They generally have a negative impact on your credit score."

31. Jefferson is registered with the Florida Office of Financial Regulation as Consumer Collection Agency.

32. Thus, Equifax should have placed these tradelines under the "Collections" header of Ms. Brennan's Disclosure, rather than the "Credit Accounts" header.

33. The failure to disclose full account numbers violates the FCRA's requirement that a CRA disclose all information contained in a consumer's credit file clearly and accurately. *See Washington v. Equifax*, Case No. 3:19-cv-00154 (M.D. Tenn. Jun. 12, 2019) ("The plain language of the FCRA requires that the consumer reporting agency shall clearly and accurately disclose to the consumer '[a]ll information in the consumer's file at the time of the request.' 15 U.S.C. § 1681g. In the absence of binding authority stating that a truncated account number is a clear and accurate disclosure, the Court finds that Plaintiff has stated a plausible claim for a violation of Section 609 of the FCRA.")

34. The failure of an entity to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), holding "alleged injury to (plaintiff's) statutorily created

right to truthful housing information" was a cognizable injury in and of itself, regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex; therefore "the Art. III requirement of injury in fact [was] satisfied.

35. The lack of accurate, full account numbers caused Ms. Brennan great frustration and emotional distress when trying to understand her credit report and verify it against her own records.

36. Further, pursuant to a 2000 FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000), "it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide 'accurate' (and perhaps not 'clear') disclosure of 'all information' in the file." SEE PLAINTIFF'S EXHIBIT C.

37. Equifax's omission of the original creditor and full account numbers greatly decreases a consumer's ability to understand her consumer credit disclosure, identify the accounts, and compare those accounts with her own records.

38. The *Credit Reporting Resource Guide*, published by the Consumer Data Industry Association ("**CDIA**"), a trade association representing the CRAs, including Equifax, states that:

> "**The purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports**. Without the original creditor names, consumers may not know what the accounts represent." (**Emphasis original**.)

SEE PLAINTIFF'S EXHIBIT B.

39. The *Credit Reporting Resource Guide* instructs debt collectors to "(r)eport the name of the company/creditor that originally opened the account for the consumer." *Id.*

40. On information and belief, Jefferson complied with the *Credit Reporting Resource Guide* and reported the name of the true original creditor of their reported account.

Page 6 of **15**

## Prevalence of Equifax's Errors

41. On information and belief, Equifax's Disclosure to Ms. Brennan was generated using a template that extracts database information from a consumer's file and populates it into various pre-programmed fields on a consumer disclosure form.

42. On information and belief, this same template is used virtually *every time* a consumer requests their file from Equifax through www.annualcreditreport.com.

43. On information and belief, www.annualcreditreport.com is the location where most consumers obtain their Equifax credit disclosure.

44. Consumer disclosures retrieved through annualcreditreport.com all exhibit the same missing account number and missing original creditor name errors.

45. Thus, *every* consumer with accounts appearing in the incorrect section of their disclosure who requested their disclosure from Equifax through www.annualcreditreport.com since the template's use began, received a consumer disclosure with the same errors as Ms. Brennan.

46. Equifax's error has therefore likely affected hundreds of thousands of consumers.

47. Equifax has known of the flaws in its systems for years, which has affected a large number of consumers. *See, e.g.*, *Justin Purdy vs. Equifax Information Services LLC*, case 8:19-cv-00217, M.D. FL, Jan. 28, 2019.

48. Equifax's knowing and repeated conduct warrants an award of *punitive damages*.

49. Equifax's failure to disclose all of the information in the consumer's credit file in free annual disclosures is an intentional violation of 15 U.S.C. § 1681g(a), motivated by the Defendant's desire to avoid costs and increase profits.

2026CC-007167-A000-BA    Received in Polk 06/25/2026 04:29 PM

50.    Ms. Brennan has a right to a full and complete disclosure of the contents of her file upon demand, at least once a year and without charge, and that disclosure must be presented clearly and accurately. 15 U.S.C. § 1681j.

51.    Equifax's failure to accurately, fully, and clearly disclose the information within its files regarding Ms. Brennan deprived her of this right.

### Duplicate Tradelines

52.    Sometime on or before July 24, 2022, Ms. Brennan opened an account with Verizon Wireless ("Verizon") for mobile cell service.

53.    Or around August 18, 2022, Ms. Brennan became delinquent to Verizon.

54.    On or about December 31, 2024, Verizon started reporting the delinquent to Equifax under its own tradeline with account number ended -0001.

55.    Verizon alleged $138 was owed on the account by Ms. Brennan (the "Debt").

56.    Around February 24, 2025, Verizon sold the Debt to Jefferson.

57.    Shortly after this, Verizon, as part of its normal, monthly reporting, reported the status of the account as "DA," the Metro 2 code for "delete account," to Equifax, Experian and Trans Union, as Verizon no longer owns the Debt.

58.    However, Equifax did not delete the Verizon tradeline.

59.    As a result, Verizon showed a $138 balance owed and a "date last reported" of December 31, 2024, in Equifax's credit file on Ms. Brennan.

60.    Sometime around June 2025, Jefferson began reporting the Debt, monthly, to Equifax.

61.    Jefferson reported to Equifax that Ms. Brennan owed $138, that the original creditor was Verizon.

2026CC-007167-A000-BA    Received in Polk 06/25/2026 04:29 PM

62.     Equifax requires its furnishers of information to update non-$0 balances at least once a month, to prevent stale, out-of-date information from being reported to consumer's credit histories.

63.     Verizon made no further reports to Equifax after December 31, 2024.

64.     Despite the fact the tradelines were clearly duplicates of each other – containing the same reported creditor name, balance, date of first delinquency -- and despite the fact Verizon had not made monthly reports as *required* by Equifax, Equifax continued to include the Verizon tradeline alleging an actively-owed, $138 balance as well as the Jefferson collection tradeline, which likewise alleged an actively-owed, $138 balance.

65.     As both iterations of the Debt tradeline were derogatory, the duplication of the negative data had a catastrophically negative effect on Ms. Brennan's credit reports and scores, since almost all consumer credit scores, including FICO® and Vantage®, heavily consider the *number* of derogatory tradelines.

66.     Additionally, anyone viewing Ms. Brennan's credit report would falsely conclude that she had two different debt to two different creditors, totaling $276, instead of one singular debt of $138.

67.     When preparing reports, Equifax was required to use reasonable procedures to ensure maximum possible accuracy of the reports it produced. See 15 U.S.C. § 1681e(b).

68.     Equifax should have easily been able to spot the fact it was including duplicate information in reports it sold, especially considering Verizon had instructed Equifax to delete its tradeline back in February 2025.

69.     Nonetheless, Equifax produced and sold reports about Ms. Brennan which included both the Verizon and Jefferson tradelines.

70. As a result, Ms. Brennan was denied credit.

71. The Verizon tradeline indicated that it was charged off, while the Jefferson tradeline indicated that it was in collections, creating the appearance of two derogatory accounts[1].

72. Equifax's inclusion of the outdated, erroneous Verizon tradeline caused significant harm to Ms. Brennan's credit scores, as the number of charged-off and collection accounts on a consumer's credit report adversely affects the consumer's credit scores.

73. The duplication of the amount of outstanding debt also increased Ms. Brennan's debt-to-income ratios, another critical metric examined by lenders when evaluating borrowers for loans and lines of credit.

74. On information and belief, Equifax's automated systems do not flag accounts as duplicates if identical information is reported from different furnishers.

75. Equifax thus failed to use reasonable procedures when preparing the credit reports sold throughout 2025 and 2026, including, but not limited to, Wells Fargo Card Services, CitiBank, N.A, and Bristol West Insurance Company.

76. As a result of the Equifax' refusal to implement even basic procedures to weed out duplicate accounts, Ms. Brennan was unable to obtain the lines of credit she applied to.

77. Further, and as a result of the Equifax' conduct, Ms. Brennan has suffered loss of credit, damage to her reputation, and severe emotional distress.

78. Ms. Brennan has hired the undersigned law firm to represent her in this matter and has assigned the firm her right to fees and costs.

---

[1] There is little practical distinction between a "charged off" account and an account "in collection," other than "charged off" usually refers to a status reported by an original creditor, whereas "collection" usually refers to a status reported by a debt collector like LVNV.

## COUNT I
## EQUIFAX'S WILLFUL VIOLATIONS OF THE
## FCRA, 15 U.S.C. § 1681e(b)

79.    Ms. Brennan adopts and incorporates paragraphs 1 - 78 as if fully stated herein.

80.    Equifax violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Ms. Brennan when Equifax sold reports containing both the Verizon and Jefferson tradelines, when both tradelines represented the same underlying account.

81.    Equifax has been sued before for identical conduct, and is thus aware that its procedures for ensuring accuracy of reports are flawed.

82.    Equifax has been sued on numerous occasions for reporting duplicate tradelines and is aware that its systems for ensuring accuracy are flawed and do not flag such information when reported to it by different furnishers of data.

83.    Equifax's conduct was thus willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

84.    Accordingly, Equifax is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Brennan's actual damages or statutory damages of $1000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Brennan respectfully requests this Honorable Court enter judgment against Equifax for:

a.    The greater of Ms. Brennan's actual damages and statutory damages of $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §
1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT II
## EQUIFAX'S NEGLIGENT VIOLATIONS OF THE
## FCRA, 15 U.S.C. § 1681e(b)
### (Plead in the Alternative to Count I)

85.    Ms. Brennan adopts and incorporates paragraphs 1 - 78 as if fully stated herein and plead in the alternative to Count I.

86.    Equifax violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Ms. Brennan when Equifax sold reports containing both the Verizon and Jefferson tradelines, when both tradelines represented the same underlying account.

87.    Equifax owed Ms. Brennan a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of consumer reports sold regarding Ms. Brennan.

88.    Equifax breached this duty when it sold consumer reports containing a duplicate tradeline regarding an credit card issued by Verizon with a charged-off balance.

89.    Equifax acted negligently, and is liable, pursuant to 15 U.S.C. § 1681o, for Ms. Brennan's actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Brennan respectfully requests this Honorable Court enter judgment against Equifax for:

a.    Ms. Brennan's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

Page **12** of **15**

2026CC-007167-A000-BA        **Received in Polk 06/25/2026 04:29 PM**

## COUNT III
## EQUIFAX'S WILLFUL VIOLATIONS OF THE FCRA

90.    Ms. Brennan adopts and incorporates paragraphs 1 - 78 as if fully stated herein.

91.    Equifax violated **15 U.S.C. § 1681g(a)(1)** when responding to Ms. Brennan's request for her consumer disclosure by failing to clearly and accurately disclose to Ms. Brennan, a *Consumer*, all of the information in her file at the time of the request. Specifically, Equifax disclosed an account reported by Jefferson without disclosing the full account numbers or the names of the *Original Creditors*, as well as twenty-two (22) additional accounts which lacked the full account numbers, even though full account numbers were reported by the data furnishers.

92.    Equifax knowingly provided inaccurate information in Ms. Brennan's disclosure, as it knew of these issues, which have been identified and disputed by other consumers for years.

93.    Equifax is therefore liable to Ms. Brennan, pursuant to 15 U.S.C. § 1681n, for the greater of her actual damages and statutory damages of up to $1,000 per violation, plus attorneys' fees and costs.

**WHEREFORE,** Ms. Brennan respectfully requests that the Honorable Court enter judgment against Equifax for:

a.    The greater of statutory damages of **$1,000.00** per incident and Ms. Brennan's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT IV
## EQUIFAX'S NEGLIGENT VIOLATIONS OF THE FCRA

Page **13** of **15**

**(Plead in the Alternative to Count III)**

94.    Ms. Brennan adopts and incorporates paragraphs 1 - 78 as if fully stated herein.

95.    Equifax violated **15 U.S.C. § 1681g(a)(1)** when responding to Ms. Brennan's request for her consumer disclosure by failing to clearly and accurately disclose to Ms. Brennan, a *Consumer*, all of the information in her file at the time of the request. Specifically, Equifax disclosed an account reported by Jefferson without disclosing the full accounts number or the names of the *Original Creditors*, as well as twenty-two (28) additional accounts which lacked the full account numbers, even though full account numbers were reported by the data furnishers.

96.    Equifax has a legal duty to provide consumers with a clear and accurate disclosure of all information within its file at the time of the consumer's request.

97.    Equifax breached this duty when Equifax disclosed an account reported by Jefferson without disclosing the full account numbers or the names of the *Original Creditors*, as well as twenty-two (22) additional accounts which it disclosed without full account numbers, even though full account numbers were reported by the data furnishers.

98.    Equifax is therefore liable to Ms. Brennan, pursuant to 15 U.S.C. § 1681o, for Ms. Brennan's actual damages, plus attorneys' fees and costs.

**WHEREFORE**, Ms. Brennan respectfully requests that the Honorable Court enter judgment against Equifax for:

a.    Ms. Brennan's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

**<u>JURY TRIAL DEMANDED</u>**

Page **14** of **15**

2026CC-007167-A000-BA        Received in Polk 06/25/2026 04:29 PM

Ms. Brennan hereby demands a trial by jury on all issues so triable.

Respectfully submitted on June 25, 2026, by:

**SERAPH LEGAL, P. A.**
*/s/ Bridget L. Scarangella*
Bridget L. Scarangella, Esq.
Florida Bar No.: 1022866
3505 East Frontage Road, Suite 145
Tampa, FL 33607
Tel: 813-567-1230 (Ext: 306)
Fax: 855-500-0705
BScarangella@seraphlegal.com
*Counsel for Plaintiff*

**2026CC-007167-A000-BA**     **Received in Polk 06/25/2026 04:29 PM**